IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GREGORY L. BOOKER,

    Plaintiff,

v.

ARMACELL, LLC,

    Defendant.

1:24-CV-1109-DAB-JGM

## MEMORANDUM ORDER AND OPINION

Plaintiff Gregory L. Booker, proceeding pro se, alleges that his former employer, Armacell, LLC, discriminated and retaliated against him in violation of federal law and defamed him under North Carolina law. But after receiving the EEOC's right-to-sue notice, Booker failed to file this action within the 90-day statute of limitations, and he has not plausibly alleged grounds for equitable tolling. Because the untimeliness of his federal claims is apparent from the pleadings, the Court dismisses those claims with prejudice and declines to exercise supplemental jurisdiction over the remaining state law claims.

### FACTUAL BACKGROUND[1]

Plaintiff Gregory L. Booker, proceeding pro se, is a former employee of Defendant Armacell, LLC. *Complaint* (D.E. 1) ¶ 7. He began working for Armacell in August 2017, initially holding positions in the warehouse and in customer service, before advancing to the inside sales/account manager department. *Id.* ¶ 15. In February 2022, Armacell eliminated that department. *Id.* ¶ 16. Rather than accept a severance package, Booker chose to remain employed and was reassigned to a customer service role. *Id.*

---

[1] For purposes of this motion, the Court "accept[s] all well-pleaded allegations in the complaint as true and draw[s] all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).

After the reassignment, Booker alleges that he was discriminated against based on his race, color, gender, and age. He contends, among other things, that supervisors made disparaging comments about his gender, scrutinized his overtime hours, and denied him business travel opportunities. *Id.* ¶¶ 17–19. He alleges that during a July 2022 meeting with human resources, his supervisor falsely accused him of poor performance and of receiving negative feedback from customers. *Id.* ¶ 20. In that meeting, he was allegedly presented with a "Last Chance Agreement" containing additional false statements about his performance, which he refused to sign. *Id.* He also alleges that the statements made during that meeting were communicated to other employees. *Id.* ¶ 41. Armacell terminated Booker's employment on August 24, 2022. *Id.* ¶ 21.

Following his termination, Booker filed a charge of discrimination with the United States Equal Employment Opportunity Commission. *See Charge of Discrimination* (D.E. 8-1) pp. 2–4.[2] On September 19, 2024, the EEOC issued a Determination and Notice of Rights dismissing the charge and advising Booker of his right to sue. *See Right-to-Sue Notice* (D.E. 8-1) pp. 5–8.[3] The first page of the Right-to-Sue Notice stated in bold that "your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice" and further warned that "[y]our right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days." *Id.* p. 5. (emphasis in original). An enclosure entitled "Information Related to Filing Suit Under the Laws Enforced by the EEOC" reiterated this deadline. *Id.* p. 8.

The Complaint is silent about when or how Booker received the Right-to-Sue Notice. In his opposition, Booker asserts it was never mailed and contends he was unable to access it through the EEOC's online portal until September 27, 2024, due

---

[2] The Complaint does not allege when Booker submitted the Charge. The Charge's digital signature is dated April 6, 2023. *See Charge* (D.E. 8-1) p. 2. In later briefing, however, Booker contends that he filed the Charge on February 12, 2023. *Surreply* (D.E. 13-1) p. 3 ¶ 5. The Court need not resolve this discrepancy. For purposes of this motion, the Court assumes the earlier filing date asserted in Booker's briefing. In any event, the timeliness analysis in this Order turns on the date Plaintiff received the Right-to-Sue Notice, not the date the Charge was filed, so the discrepancy does not affect the outcome.

[3] The Court may consider documents "attached to the motion to dismiss," including the Charge and Right-to-Sue Notice, "so long as they are integral to the complaint and authentic." *Just Puppies, Inc. v. Brown*, 123 F.4th 652, 660 (4th Cir. 2024) (citation omitted). Here, both the Charge and the Right-to-Sue Notice are integral to Booker's claims, and he does not challenge either document's authenticity. Accordingly, the Court considers these documents.

to unspecified technical difficulties. *Resp.* (D.E. 11) pp. 4–5 ¶¶ 8–9. Booker mailed his Complaint on December 27, 2024, though it was not delivered to the Clerk's Office until December 30, 2024. *Compl. Envelope* (D.E. 1-1) p. 1. The Complaint asserts five claims: discrimination based on race, color, and gender in violation of Title VII of the Civil Rights Act of 1964 (Count I); age discrimination in violation of the Age Discrimination in Employment Act of 1967 (Count II); retaliation under Title VII (Count III); defamation under North Carolina law (Count IV); and wrongful termination under Title VII and the ADEA (Count V).

Armacell moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) contending, among other things, that Booker's Title VII and ADEA claims are barred by the 90-day statute of limitations. *See* D.E. 7. Booker has also moved for leave to file a surreply. *See* D.E. 13. Both motions are fully briefed. For the reasons discussed below, the Court grants Defendant's motion to dismiss and denies Plaintiff's motion for leave to file a surreply.

## LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations must "raise a right to relief above the speculative level, thereby nudging the claims across the line from conceivable to plausible." *Evans v. United States*, 105 F.4th 606, 616 (4th Cir. 2024) (quoting *Bazemore v. Best Buy*, 957 F.3d 195, 200 (4th Cir. 2020)). The "court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). But it "'need not accept' as true a complaint's legal conclusions, 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Seabrook v. Driscoll*, 148 F.4th 264, 269 (4th Cir. 2025) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

The "court may dismiss a complaint on statute of limitations grounds if the time bar is apparent on the face of the complaint." *Sanchez v. Arlington Cnty. Sch. Bd.*, 58 F.4th 130, 135 (4th Cir. 2023) (quoting *Ott v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 658 (4th Cir. 2018)). Courts may also consider documents incorporated into the complaint by reference, matters subject to judicial notice, and documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Just Puppies, Inc. v. Brown*, 123 F.4th 652, 660 (4th Cir. 2024) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

3

Pro se pleadings must "'be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Liberal construction, however, "does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020). Nor does it "transform the court into an advocate." *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012) (quoting *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990)). A pro se plaintiff must still "allege sufficient facts 'to raise a right to relief above the speculative level' and 'state a claim to relief that is plausible on its face.'" *King*, 825 F.3d at 225 (quoting *Twombly*, 550 U.S. at 555, 570).

## DISCUSSION

This case turns on a straightforward limitations question. Title VII and the ADEA require a plaintiff to file suit within 90 days of receiving the EEOC's Right-to-Sue Notice. Booker did not do that here, nor has he plausibly alleged any basis for equitable tolling. The Court accordingly dismisses those claims and declines to exercise supplemental jurisdiction over Booker's remaining state law claim.

### I. Booker's Title VII and ADEA claims are barred by the statute of limitations.

As an initial matter, Booker's Title VII and ADEA claims are untimely. Under Title VII, a plaintiff must sue "within ninety days after the giving of" an EEOC right-to-sue notice. 42 U.S.C. § 2000e-5(f)(1); *see Allen v. Atlas Box & Crating Co., Inc.*, 59 F.4th 145, 147 (4th Cir. 2023) (noting that a Title VII action "must 'be brought' 'within 90 days' after receiving a right-to-sue letter" (citation omitted)). Similarly, an ADEA claimant must sue "within 90 days after the date of receipt of such notice." 29 U.S.C. § 626(e); *see Quinn v. Copart of Conn., Inc.*, 791 F. App'x 393, 395 (4th Cir. 2019) (per curiam). These 90-day requirements function as statutes of limitation. *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149–51 (1984); *Watts-Means v. Prince George's Family Crisis Ctr.*, 7 F.3d 40, 42 (4th Cir. 1993); *see also Birch v. Peters*, 25 F. App'x 122, 123 (4th Cir. 2001) (per curiam) ("A claimant who fails to file a complaint within the ninety-day statutory time period mandated by Title VII … and the ADEA … generally forfeits her right to pursue her claims.").

Here, the EEOC issued its Right-to-Sue Notice on September 19, 2024. *See Right-to-Sue Notice* (D.E. 8-1) p. 5. Booker contends he was unable to access the Right-to-Sue Notice until September 27, 2024. *Resp.* (D.E. 11) p. 4 ¶ 8. For purposes of this motion, the Court assumes—without deciding—that September 27, 2024, was

4

the date of receipt triggering the statute of limitations.[4] Counting 90 days forward, the limitations period would have expired on December 26, 2024. *See* Fed. R. Civ. P. 6(a)(1). Because December 26, 2024, was a "legal holiday" in North Carolina,[5] the deadline extended to Friday, December 27, 2024. *See* Fed. R. Civ. P. 6(a)(1)(C), (a)(6)(C). Booker must have filed the Complaint by December 27, 2024.

He did not. Although Booker mailed his Complaint on December 27, 2024 *see Compl. Envelope* (D.E. 1-1) p. 1, mailing does not constitute filing. Filing a complaint instead requires "delivery of the document to a court officer authorized to receive it." *Allen*, 59 F.4th at 147 (quoting Wright & Miller, 4 Fed. Prac. & Proc. Civ. § 1052 (4th ed. 2022)); *see* Fed. R. Civ. P. 5(d)(2)(A) ("A paper not filed electronically is filed by delivering it … to the clerk."). Because Booker mailed the Complaint, it was not filed until delivered. *See, e.g.*, *Raymon v. Ameritech Corp.*, 442 F.3d 600, 604–05 (7th Cir. 2006); *McIntosh v. Antonio*, 71 F.3d 29, 36–37 (1st Cir. 1995). Because Booker's Complaint was not delivered until December 30, 2024, *Compl. Envelope* (D.E. 1-1) p. 1, it was untimely.

That delivery occurred only one business day after the deadline makes no difference. Absent "a recognized equitable consideration," courts cannot extend the 90-day limitations period "by even one day." *Hayes v. N.J. Dep't of Human Servs.*, 108 F.4th 219, 221 (3d Cir. 2024) (quoting *Mosel v. Hills Dep't Store, Inc.*, 789 F.2d 251, 253 (3d Cir. 1986) (per curiam)). Dismissal is therefore warranted where, as here, a complaint is filed only one business day late. *See, e.g.*, *Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 653 (4th Cir. 1987) (affirming dismissal of Title VII complaint filed 91 days after receipt of right-to-sue letter).

---

[4] The pleadings do not establish whether the 90-day period began to run on September 19, 2024 (the date of issuance), or September 27, 2024 (the date Booker asserts he first accessed the Right-to-Sue Notice). For physically mailed notices, the "limitations period is triggered when the Postal Service delivers notice to a plaintiff that the right-to-sue letter is available for pickup, and not when the letter is actually picked up." *Watts-Means*, 7 F.3d at 42. Courts have similarly held that email delivery triggers the 90-day period. *See McDonald v. St. Louis Univ.*, 109 F.4th 1068, 1070–71 (8th Cir. 2024). The Court need not resolve the precise trigger date here. Even assuming in Booker's favor that the 90-day period did not begin until September 27, 2024—when he admits he accessed the Right-to-Sue Notice—the Complaint remains untimely.

[5] *See* North Carolina Off. of State Hum. Res., *2024 Holiday Schedule*, https://oshr.nc.gov/2024-holiday-schedule/open (last visited Feb. 26, 2026).

Nor does Booker's pro se status salvage his untimely filing. He is not incarcerated and cannot invoke the "prison mailbox rule," which deems a pro se prisoner's filing effective upon delivery to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988). Nor does the obligation to liberally construe pro se pleadings permit a court to disregard statutory deadlines. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."). To the contrary, "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin*, 466 U.S. at 152. Booker's Title VII and ADEA claims are untimely.

## II. Equitable tolling does not save Booker's claims.

Booker contends the 90-day filing period should be equitably tolled. *Resp.* (D.E. 11) pp. 4–5 ¶ 9. A plaintiff "face[s] a considerable burden to demonstrate that" equitable tolling applies. *CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 476 (4th Cir. 2015). At this stage, "the district court's task is limited to determining whether the plaintiff might show that he satisfies the conditions for equitable tolling on a full record." *Watkins v. Mohan*, 144 F.4th 926, 942 (7th Cir. 2025), *cert. petition filed*, No. 25-952 (U.S. 2026). Booker makes no such showing.

"Equitable tolling is a rare remedy available only where the plaintiff has 'exercised due diligence in preserving [his] legal rights.'" *Cruz v. Maypa*, 773 F.3d 138, 145 (4th Cir. 2014) (quoting *Chao v. Virginia Dep't of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002)) (internal brackets omitted). It "is appropriate in two circumstances." *Id.* The first circumstance, which Booker does not argue, applies "when 'the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant.'" *Id.* (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)).

The second circumstance, which Booker invokes, applies "when 'extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time.'" *Id.* (quoting same). To satisfy this "extraordinary circumstances" test, a plaintiff must establish: "(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Justus v. Clarke*, 78 F.4th 97, 105 (4th Cir. 2023) (quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003)), *cert. denied*, 144 S. Ct. 1096 (2024). Although he identifies three purported extraordinary circumstances, none justify equitable tolling.

He initially cites unspecified "system issues" that prevented him from accessing the Right-to-Sue Notice for eight days, until September 27, 2024. *Resp.*

6

(D.E. 11) p. 4 ¶ 8. As outlined above, even if these technical difficulties could constitute an "extraordinary circumstance"—which the Court does not decide—his Complaint remains untimely after tolling for these eight days. The asserted delay did not "prevent[] him from filing on time." *Justus*, 78 F.4th at 105 (citation omitted). Additionally, equitable tolling requires a plaintiff to exercise "due diligence." *Cruz*, 773 F.3d at 145 (citation omitted). This Circuit rejects equitable tolling where plaintiffs fail to act timely after comparable periods following notice. *See Watts-Means*, 7 F.3d at 42 (declining equitable tolling where plaintiff had 85 days remaining to file suit after actual receipt of right-to-sue letter); *Harvey*, 813 F.2d at 654 (rejecting tolling where plaintiff had 84 days to sue after learning of right-to-sue letter). As in those cases, Booker's failure to exercise timely due diligence independently bars equitable tolling here.

Despite being unrepresented, Booker next argues he relied on an unidentified attorney's advice that his filing deadline was December 27, 2024. *Resp.* (D.E. 11) p. 5. Even assuming this is true, he failed to follow this advice because he did not file the Complaint until December 30, 2024. Further, even if an attorney had miscalculated the deadline—which the Court need not decide—"attorney negligence does not justify equitable tolling." *Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 227 (4th Cir. 2005). This is particularly true when a plaintiff chooses not to hire an attorney and proceeds pro se. A pro se plaintiff's "ignorance of the law is not a basis for equitable tolling." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004). These principles have special force here because the Right-to-Sue Notice repeatedly warned Booker that his suit must be filed within 90 days of receipt. *See Right-to-Sue Notice* (D.E. 8-1) pp. 5, 8. He did not comply with this clear instruction. This is not an extraordinary circumstance warranting equitable tolling.

Finally, Booker relies on generalized and conclusory assertions of emotional and financial hardship. *See Resp.* (D.E. 11) p. 5 ¶ 9(iv). But equitable tolling requires a showing of "extraordinary circumstances"—not simply that the plaintiff faced difficulty or stress. *Justus*, 78 F.4th at 105 (citation omitted). He does not allege incapacity, hospitalization, mental incompetence, or any other condition rendering him unable to submit a timely complaint. To the contrary, he filed his Complaint on December 30, 2024, yet provides no explanation why he was able to file on that date but could not have done so one business day earlier. *See Rouse*, 339 F.3d at 248 (declining equitable tolling where plaintiff "provides no reason why his medical condition barred him from filing his habeas petition at least one day earlier"). Nor do his bare allegations of hardship suffice. *See, e.g.*, *United States v. Taylor*, No. 01-7114, 2001 WL 1545911, at *1 (4th Cir. 2001) (per curiam) ("[C]onclusory allegations of illness are insufficient to equitably toll the statute of limitations.");

*San Martin v. McNeil*, 633 F.3d 1257, 1268 (11th Cir. 2011) ("Mere conclusory allegations are insufficient to raise the issue of equitable tolling.").

Because Booker provides no plausible basis for equitable tolling, the Court dismisses his Title VII and ADEA claims.[6]

### III. The Court declines to exercise supplemental jurisdiction over the remaining state law claim.

Booker invokes federal question jurisdiction and supplemental jurisdiction as the sole bases for subject matter jurisdiction. *Compl.* (D.E. 1) ¶ 11. Because the Court dismisses all federal claims, only Booker's state law defamation claim remains. The Court declines to exercise supplemental jurisdiction over that claim.

A district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Courts have "wide latitude" in this respect and consider factors including "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). That said, "[g]enerally, when a district court dismisses all federal claims in the early stages of litigation," including at the motion to dismiss stage, "it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice." *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024) (quoting *Banks v. Gore*, 738 F. App'x 766, 773 (4th Cir. 2018)).

This case falls under this general rule. The litigation remains at the pleading stage, and the Court has not entered a scheduling order or assessed the merits of the defamation claim. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Where, as here, the federal claims are dismissed early and no federal policy remains at stake, principles of federalism

---

[6] Booker also moves for leave to file a surreply. *See* D.E. 13. Surreplies are "generally disfavored" in this District and are permitted "only when fairness dictates based on new arguments raised in the previous reply." *McClatchy Co. v. Town of Chapel Hill*, 657 F. Supp. 3d 769, 779 (M.D.N.C. 2023) (citations omitted). Booker has not identified any new argument raised for the first time in Armacell's reply that would warrant additional briefing. The Court therefore denies the motion for leave to file a surreply. In any event, even if the Court were to consider the proposed surreply, the result would be the same, as the additional arguments do not alter the Court's analysis.

8

weigh strongly in favor of allowing state courts to resolve the remaining issues. Accordingly, the Court declines to exercise supplemental jurisdiction over Booker's defamation claim.[7]

## CONCLUSION

For the reasons stated above, the Court grants Armacell's motion to dismiss (D.E. 7) and dismisses Booker's Title VII and ADEA claims (Counts I–III and V) with prejudice because they were not filed within the 90-day statute of limitations and amendment would be futile.[8] The Court declines to exercise supplemental jurisdiction over Booker's remaining state law defamation claim (Count IV) and dismisses it without prejudice. Finally, the Court denies Booker's motion for leave to file a surreply (D.E. 13). A separate Judgment will be entered contemporaneously with this Memorandum Order and Opinion.

This the 5th day of March, 2026.

                                       */s/ David A. Bragdon*
                                       United States District Judge

---

[7] In his opposition brief, Booker references additional legal theories, including hostile work environment and intentional infliction of emotional distress. *Resp.* (D.E. 11) pp. 12–16. These claims are not pled in the Complaint, and a "part[y] cannot amend their complaints through briefing[.]" *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). Accordingly, the Court evaluates only the claims asserted in the Complaint. Even so, to the extent Booker's briefing could be construed as attempting to assert additional state law claims, those theories would fall within the Court's supplemental jurisdiction. Because the Court declines to exercise supplemental jurisdiction, those claims would likewise be dismissed.

[8] Before dismissing a pro se complaint with prejudice, a court must either afford the plaintiff an opportunity to amend or explain why amendment would be futile. *King*, 825 F.3d at 225. Amendment is futile where the proposed amendment would remain barred by the statute of limitations. *See Cannon v. Peck*, 36 F.4th 547, 576 (4th Cir. 2022). Here, Booker identifies no facts that could plausibly establish timely filing or equitable tolling. Because the limitations bar cannot be cured through repleading, leave to amend for these claims would be futile.